Will the clerk please call the next case? 1-23-1896-WC Jerry Faruzzi, Appellant, by Kevin Vogler, v. Illinois Workers' Compensation Comm'n, et al., Village of Alseth, Appalachia, by Keza Staninka. Mr. Vogler, you may proceed. Thank you, Your Honor. Good morning, everyone. May it please the court, my name is Kevin Vogler. I represent the appellant and petitioner, Jerry Faruzzi. Jerry was a 49-year-old firefighter paramedic with the Village of Alseth. He was a firefighter paramedic since age 22. He developed coronary artery disease that was identified during a company physical and fitness for duty exam that resulted in the need for angioplasty and stenting. The arbitrator found that his firefighting duties contributed to the cause of the development of coronary artery disease, and the commission reversed. There are evidentiary issues that are important, and I'll address those if we have time, but what I really want to focus on is the causation issue. Obviously, I'm aware that the commission is the fact finder, and the commission makes those determinations and weighs the evidence, and that this court reviews these type of issues on a manifest weight standard. But I think when we look at the finding, I cited in our brief, and I'd like to discuss two cases, the Gross and the Tolbert cases, because I think those really highlight the commission's error. The Gross case was a coal miner who alleged that coal dust resulted in the development of chronic obstructive pulmonary disease. He had a history of cigarette smoking, and the respondent's section 12 examiner listed the risk factors of chronic obstructive pulmonary disease to include cigarette smoking, and his determination was that the cigarette smoking was the sole cause of that petitioner's development of the lung disease. The section 12 examiner and the court noted that despite the exposure to coal dust, that the obstructive lung disease was only due to cigarette smoking. The court went through the analysis of the manifest weight and went through when is it appropriate to rely on expert opinions to make a finding on causal connection. In that case, despite the fact that there was evidence of cigarette smoking, it was undisputed that petitioner also had exposure to, work exposure to coal dust, and that the commission's finding that his chronic obstructive pulmonary disease was only due to smoking was against the manifest weight standard. Similarly, in the Tolbert case, that also was a lung condition that was alleged that it was a result of bird droppings. In that case, respondent section 12 also determined that cigarette smoking was a risk factor associated with the development of the lung condition, but in that case, the respondent's section 12 examiner never analyzed whether or not the work activities were also a cause of the lung condition. In that case, the appellate court again reversed the commission's decision based on a manifest weight standard, finding that the expert opinions that were elicited by the respondent didn't address the issues that were before the and remanded the case back to the commission. Now, in this case, what is the evidence that we have in this case? Okay, counsel, can I ask a question? The injury in this case, according to your theory, is coronary artery disease. Is that correct? That is. Is there a difference between coronary artery disease and a cardiac event? There is. Was there a cardiac event in this case? In this case, there was not. There was no cardiac event. And what do you do with Samuel's opinion that firefighting may very well contribute to a coronary event, but it has nothing whatever to do with coronary artery disease. It can't cause it. Coronary artery disease is caused by a buildup of plaque in the artery. And he testified very clearly that firefighting does not cause coronary artery disease. It can trigger a coronary event in an individual who has coronary artery disease. What's your answer to those opinions? Well, I think it's similar to what the court did in the Tolbert case. And that is, what is the basis for that opinion? Does that opinion, is there a sufficient basis to find that that opinion is a credible opinion and something that should be addressed or should be looked at by the court? And in this case, Dr. Samuel is an author of a publication that specifically identifies firefighting duties as a cause for the development of coronary artery disease. He was the one who wrote that paper and contributed to that paper. And so for him to come in and say, well, there's no causal, we don't know any causal connection between firefighting activities and the development of coronary artery disease. It's not just unbelievable. It's just he also was the author of another publication that we cite in the brief that specifically identified coronary artery disease as being a risk associated with firefighting activities. And so from that standpoint, what we do have with Dr. Samuel is he at no time makes any opinion about what caused the petitioner's coronary artery disease. He says there's no way to rule in or rule out any of the risk factors he identifies. And that's really the issue because we have a clear statement from Dr. Moisen that says, listen, there are the development of coronary artery disease is multi-factor. There are a lot of things that go into it. I can't tell you any one specific thing that leads to the development of coronary artery disease. But what I can tell you is to a reasonable degree of medical certainty, his firefighting activities were a cause to that development. Now, when you start with that, that's the standard that we're required to establish. Now, the flip side of that is, what do we see on the other side? We have four section 12 examiners. Dr. Everett, Dr. Everett says, I can't say, I can't rule in or rule out any of the risk factors that he identifies as causing his coronary artery disease. Now, the significant thing, I think, the important thing is they never even gave him the job duties and they never gave him the job duties and said, hey, could these work activities, could these have caused the development of coronary artery disease? He doesn't. And so from that standpoint, I don't believe that the commission can rely on Dr. Everett's testimony to establish that there's no causal connection. He doesn't give an opinion one way or the other. Dr. Sammo, he identifies also several risk factors. He never says that any of those risk factors cause the coronary artery disease. And the same thing with Dr. McDonough. Dr. McDonough comes in and says, there are a bunch of risk factors associated with it. Firefighting duties is a risk factor associated with it, but I can't rule in or rule out any of those. The last is Dr. Everett. Dr. Everett specifically says, I do believe that his current condition is a result of his work activities. And he believes it's more due to pulmonary function, but he never gives any opinion with regard to the development of coronary artery disease either for or against. And I think that's really the problem with the commission's decision. We do have four section 12 examiners on the respondent side, but none of those opinions, none of those doctors give an opinion to a reasonable degree of medical certainty that firefighting activity, that his firefighting activities had nothing to do with the development of coronary artery disease. They say they don't know. And the bigger issue judge is we have a commission decision that just flat out misstates the facts in the case. They specifically say that Dr. Moisen could not rule in or rule out petitioners firefighting activities as causing coronary artery disease, like doctors Everett, Sammo, and McDonough. You're, you're entirely correct. Sammo is the only one that ruled definitively. The other two did not. The other two were equivocal or internally inconsistent. And Dr. Moisen did not agree with them. Dr. Moisen specifically said the opposite. He said that firefighting duties did contribute to petitioners development of coronary artery disease. And so for the commission to say that Dr. Moisen didn't have that opinion, it's just wrong. It's not accurate. And so when we look at this case under a manifest weight standard, we have Dr. Moisen specifically stating that it's causally connected. And then we have three doctors who say, I don't know what caused the coronary artery disease. And I think if we look at Tolbert and we look at growth, I think under the manifest weight standard, it should be reversed. And the arbitrator's decision should be reinstated. I also do want to touch on the status of Dr. Moisen, 12 examiner. Dr. Moisen was the medical director for the village of Ellison. Okay. He had performed fitness for duty exams on the petitioner for 19 years. We took his deposition. We noticed up his deposition and took his deposition because he was the guy who has done these examinations for the village of Ellison. They have relied on him. They have relied on his opinions and he specifically found a causal connection. I thought that might end the case. They decided to- What was the basis of his finding of a causal connection? His familiarity with the work duties of a Ellison firefighter. Can I ask you a question? Dr. Moisen was the pope. And I'm going to ask you if you made this statement. He was asked whether claimant's coronary artery disease was caused by or contributed to by his firefighting duties. I believe his answer is, and I'll quote it. I can't know that. I can't exclude it. I can't exclude it as a component. He says he doesn't know. And we have that problem with several of these witnesses. In one breath, they say, oh, yes, it is. In the next breath, they say, well, you can't know that definitively. I can't say that within a reasonable degree of medical certainty. The only one that I can find in these things that specifically says it doesn't relate is Samuel. He says very explicitly, I've got his depth in front of me. He says the coronary artery disease itself is not caused by firefighting. It's only a buildup of plaque. And it isn't until you get these triggering events of firefighting that can cause a cardiac event, meaning a myocardial infarction, a heart attack. And in this particular case, there was no event. And so what Samuel was saying is firefighting may very well be a trigger that can trigger coronary artery disease and result in a cardiac event. But it does not itself cause the coronary artery disease. And he, by the way, says he disagrees with the literature that suggests that firefighting does cause coronary disease. So, I mean, his testimony is very definitive. The others, Moyse is equivocal. He doesn't know. Maybe it is, maybe it's not. I can't say it definitively. And the others have some pretty internal inconsistencies too. But what do you do with the theory that it doesn't actually cause the coronary artery disease? Well, Judge, I want to cite to you, specifically, it's in the record, it's C1069 to 1070, where I cited in my brief on page 11, we go through all of those issues. And the question is whether or not it is a cause. And, you know, I could read you, but I know I'm running out of time. But so the answer to my question is yes, firefighting paramedic activities with the ELSA Fire Department contributed at least in part to his coronary artery disease. To what extent, we don't know. Okay, agreed, was the answer. So he specifically, when asked the question whether or not this petitioner and these firefighting with the ELSA Fire Department were a cause of his coronary artery disease, he says yes. Now, with regard to Dr. Samo, Dr. Samo participated in the publication, Preventing Firefighter Fatalities Due to Heart Attacks and Other Cardiovascular Events. And that publication specifically found that the firefighting activities do contribute to the cardiac events that the underlying cause of which is coronary artery disease. Well, I want to just quote to you on page 16, I quoted it in my brief. This is a quote from the publication, coronary artery disease among firefighters is due to a combination of personal and workplace factors. And they list those personal and workplace factors, and they include fire smoke, physical exertion, heat stress, noise exposure, all those types of things. But Dr. Samo specifically authored a publication, Heart Disease in the Fire Service. And in that, it specifically, the finding was that coronary artery disease, firefighters face hazardous exposures and exceptional work conditions that increase their risk of coronary artery disease. That's what Dr. Samo wrote. Those were the publications that he wrote. And what did he say when you cross-examined him on it? When I cross-examined him on those documents, he never identified himself as being the author of them. What did he say as the conclusions in those articles? He said that those could, those were associated with coronary artery disease, but that there was a, there needed to be a triggering event in order to find causal connection. Okay. So I don't disagree with you, Judge, but I don't think that you can rely on that because what the Tolbert case says is, we have to look at the opinions and see if there is a proper foundation for them. Mr. Vongeler, it's not a question of whether I would rely on the opinions. The question is, could the commission? And I don't disagree with you, but that's what the Tolbert case specifically said is the commission didn't have a basis for relying on those expert opinions because the underlying basis for those opinions were not accurate. And that's why I think that in this case, reversal is appropriate. I know I'm out of my time and I'll have an opportunity to back and talk to you and I hope to address some of these issues and Justice Holdridge, your issue also. Okay. Very good. Any further questions from the court? Nope. Okay. Thank you. Yes, you'll have time and reply. Uh, uh, I'm going to try this now. Don't, uh, Shankaya. Good morning, your honor. May it please the court. Kisa Stanagia for the appellee, the village of all sip. Um, I think there are two main issues before the court today, but since council relied mostly on the issue of whether or not he met his burden of proof, I'm going to center my arguments before you this morning on that issue and, um, the finding on whether or not the commission, uh, properly found that he failed to meet his burden of proof. It's a question of fact. It can only be overturned if it's against the manifest way to the evidence, the claimant here has cherry picked testimony within thousands of pages to establish that he may have met his burden of proof. He's essentially requesting that this court reweigh the evidence and his argument does not meet the manifest way to the evidence standard. Um, there's ample evidence in the record to support the commission's decision. The burden of proof is on the claimant here. Uh, he cites the gross case where an expert witness was found to be unreliable based on the information that they, uh, uh, based their testimony on. That's exactly why dr Moysen's testimony is unreliable. Claimant offered no opinion from a cardiologist without causation regarding causation. Instead, he relied on the opinions of dr Moysen, a pulmonologist who relied only upon his fitness for duty exams that he had. He did not cite or rely on any studies or medical literature that could support a scientific link for causation between the exposures of firefighting and coronary artery disease. There was absolutely no studies or medical literature that was entered at the time of trial. I know that there's been some discussion about these essentially white events. That was an article regarding sudden acute events triggered on on the duty exposures. That is not the case here. And that's exactly what dr Sammo said when cross examined regarding that article. The heart disease and fire service again is not a scientifically researched study. It cannot be relied upon in supporting causation. Uh, and um, what kind of study is it? It's not a study. It's just, it's just a, it's essentially a white paper by NIOSH, which is a part of the CDC about best practices for firefighters. There's no study. There's no scientific evidence that could be extrapolated from that to prove causation between the development of coronary artery disease. So you're saying it's correlative. So well, let's get back to this. We all, there's lawyers throw this around. So you're saying that this data, no, and it doesn't, it doesn't report data that would support petitioners. What is it? What is the data? If any, it, it doesn't have any data. That's, that's the point. The article describes best practices for firefighters in terms of eating well and physical fitness. It doesn't have any studies saying we took a cohort of firefighters and controlled for all other risk factors. And we came up with a conclusion. There was causation there. It's not a scientific study. And that's exactly what Dr. Sammo, Dr. Everett, and Dr. McDonough when confronted with those articles explained in their testimony. Well, I don't think correlative data is causative data. Is it? It's not your honor. And that's exactly, I think the point I was trying to make associative it's correlation, which is not causation. That's associative. Yeah, I agree with you. Scientific way. Right. Right. And the only discussion regarding literature is that Dr. Everett, Dr. Sammo, and Dr. McDonough all testify emphatically, but they're unaware of any studies to support that firefighting exposures could lead to the development of coronary artery disease. And I study, they, you know, they found that you can't support causation here. Further, Dr. Moisen, and I think council relies upon this with the gross case, didn't review any job duties. There's no testimony that he reviewed job logs, knew how many fires that Lieutenant Feruzzi had to fight. There's no testimony at all that Dr. Moisen had any of this information. If you look through the whole record, the only person that actually has that testifies that heat stressors cannot be a cause for the coronary artery disease because Lieutenant Feruzzi reported to him that he only fought two fires a year. And this is consistent with the testimony presented at trial. So the only person that had a good understanding of his job duties and exposures was actually Dr. Everett. And I believe councils misconstrued Dr. Everett's testimony as he did testify that he treated firefighters and was aware of their job duties and exposures. He also testified that there was no causal relationship between firefighting and the development of coronary artery disease. That's on C-1306 to 1307. It's in the record. The Dr. Moisen's testimony that claimant wants you to adopt in the manifest way to the evidence standard is vacillatory and inconsistent. At the beginning of the deposition, he says it's debatable. It potentially could be a cause on the individual basis. It's an individual thing. I can't know. I can't exclude or include. I can't draw that conclusion. I can't determine how much firefighting stress was a risk factor for this claimant. The only opinions that he offers conclusively are that the absolute cause was the increased LDL. And that's on page 1081. And that genetics were a definite cause. And that's on page 1082. Those are the only opinions that he offers conclusively. And the commission correctly found that the opinions of Dr. Moisen were speculative and based on conjecture regarding whether or not claimant's firefighting exposures caused the development of a coronary artery disease. It was within the commission's province to review the testimony that was presented. They thoughtfully reviewed the testimony and properly afforded Dr. Moisen lesser weight. Their decision is supported by the evidence and is not against the manifest way to the evidence that should be confirmed. So you say exposures, that's an interesting thing. What's the parameters on that? That would be if Dr. Moisen had reviewed job logs and there was any testimony regarding the exposures that Lieutenant Ferruzzi faced. But he doesn't say, here are the exposures, here's the scientific evidence. And based on the scientific evidence, these exposures could be a cause. There's no testimony in the record that would support that. I'm happy to answer any further questions. Any questions from the court? Mr. Vogler, you may reply. There you are. Thank you, Justice. There's a couple of things I do want to address. Both the Tolbert as well as the Gross courts responded never even addressed those in their brief. I never even attempted to rebut the findings that were done by the appellate court in those cases. And the reason for that is because it's pretty clear they specifically rejected a section 12 exam when it says expert opinions must be supported by fact and is only valid as the facts underlying them. And the proponent of expert testimony must lay a foundation sufficient to establish the reliability of the basis for the expert's opinion. And in here, despite their statement to the opposite, Dr. Moisen specifically testified he wasn't provided with a job description. Dr. Sammo was not provided with a job description. Dr. McDonough was not provided with a job description. The only doctor who identified a job description and reviewed that was Dr. Moisen. And Dr. Moisen specifically has been relied on by the Village of Elsa to perform fitness of duty exams for their firefighters for the last 30 years, and specifically with petitioner for the last 19. Now, you were asked about whether or not there was any... Does it necessarily follow if Moisen offers an opinion and says this man's not fit for duty? Does it necessarily follow that the condition that causes him not to be fit for duty was necessarily caused by his occupation? I don't believe so. I believe the issue is, and I would liken it to, there's those cases out there where someone is a custodian and they have exposure to certain chemicals result in a skin condition or something along those lines or a lung condition. And they say, well, if they're not exposed, they don't have any symptoms or issues or problems. But the work activities may or may not have caused it, but it's the work conditions that the person can't go back to work. We have the same issue here that petitioner can't go back to work. He can't go back to work because the Village of Elsa has determined that he is not safe to return back to work. And Dr. Samuel has... I don't think there's any question this man cannot return to work because he has coronary artery disease. I don't think there's any question about that. The question is, did his occupation as a firefighter cause the coronary artery disease? And I agree with you, but you asked me, even if it wasn't caused by it, is it still compensable because he's returned? I didn't ask you that. If he cannot return as a firefighter because he has coronary artery disease, does it necessarily follow logically that the coronary artery disease was caused by his occupation? And I think that the answer to that is no, it doesn't follow logically. There has to be some evidence supporting a finding that the coronary artery disease itself was caused by his occupation. And Samuel says definitively, it was not. It was a blockage. And his occupation as a firefighter could trigger a coronary event, but he never had one. That's why I asked you at the beginning whether he had a coronary event. The answer to that is clearly he didn't. But I think you misstated my burden a little bit, Justice. And I think you'd said it has to be a cause. No, no, I understand that. Samuel says it was not a cause. He specifically says it. You want me to read to you the transcript? I will, because I got it in front of me. No, no, that's fine. But we have to read that in conjunction with his authorship of cardiovascular risks with firefighters, in which he says line of duty exposures may increase firefighters' risks for cardiovascular disease. All right. I didn't write that. That's what he wrote. And so when he's writing medical literature. Counsel, the commission knew that. The commission knew what he had written and they knew his explanation. He says, no, it's not the coronary. It can cause the event. But at any rate, go ahead. But then the question then becomes, is that appropriate to rely on that to look at the scales and say the evidence on one side and the manifest weight on the other side? I think the manifest weight points to it now. And Justice Holdridge, you had asked a question. I just want to address it real quick. You asked if there's any studies out there that show and whether we presented any studies. Well, one of the first studies that we presented was a New England Journal of Medicine article, Emergency Duties and Deaths from Heart Disease Among Firefighters in the United States. Written by Dr. Cales, Stephanos Cales, which the conclusion was heart disease causes 45% of the deaths that occur among firefighters. And so we do have that causation. There is medical literature. And so the opinions of Dr. Samuels, Dr. McDonough and Dr. Cales, that has a specific causation between firefighting duties and coronary artery disease is wrong. It's just flat out wrong. And so for this court to say, well, there's a difference of opinion among experts. There is a difference of opinion, but the opinion is just flat out wrong to say that there is no association and there's no causation between firefighting duties and coronary artery disease, and there's no literature to support that, that's not accurate. And that's why I believe that it should be reversed on a manifest weight standard. Very good. Thank you, counsel. Any questions, further questions from the court? No. No. Okay. Thank you, counsel, both for your arguments on this matter this morning.